BEFORE THE FIRST DIVISION, JUNE 18, 1958

**No. 62089.**—A. Steinhardt & Bro., Inc. *v.* United States, protest 309491–K (New York).

OLIVER, Chief Judge:   This protest has been limited to two items that are identified on the invoice as "72 Teddys 4/30 cm" and "20 Monky 103G/60 cm." They were assessed with duty at the rate of 70 per centum ad valorem under paragraph 1513 of the Tariff Act of 1930, as toys, not specially provided for. Plaintiff concedes that the articles are toys, but claims that they are provided for under the provisions in paragraph 1513, as modified by T. D. 51802, for—

Toys, not specially provided for:

    *        *        *        *        *        *

    * * * stuffed animal figures not having a spring mechanism, * * * over 6 inches but not over 11 inches in height and valued at $1 or more each, or over 11 inches but not over 14 inches in height and valued at $2 or more each, * * *_____ 25% ad val.

Specifically, plaintiff claims that the item described as "Teddys" is not over 11 inches in height and valued at $1 or more each, and that the item described as "Monky" is over 11 inches but not over 14 inches in height and valued at $2 or more each.

There is no dispute that the two articles in question have no spring mechanism, and it is agreed between the parties that the value of each is within the limitations specified in paragraph 1513, as amended, *supra*. The sole issue before us concerns the manner in which the height of these toys shall be determined. Plaintiff contends that the height of the figures is determinable from a sitting position which, as shown by the record, is 8 inches for the "Teddys" and 13½ inches for the "Monky." The collector's classification is based on the measurement of the figures in an outstretched position, being 12 inches for the "Teddys" and 23½ inches for the "Monky." An examination of the samples (plaintiff's exhibits 1 and 2) shows that the arms and the legs are movable. In other words, they are "bendable" toys, as distinguished from rigid toys, illustrated by "Puss in Boots" (plaintiff's illustrative exhibit 3), constructed so that the legs remain stationary, and the toy is always in a standing position.

Plaintiff's sole witness was its president. The gist of his testimony on direct examination is that the toys in question are displayed in a sitting position in showrooms and in stores. On cross-examination, the witness identified a catalog (defendant's illustrative exhibit A) of the foreign exporter of the present merchandise. Although pictorial representations contained therein show the figures in question in a sitting position, the descriptive matter relating thereto gives the overall dimensions of the articles. The information in the catalogs, with reference to dimensions, is consistent with such information shown on the invoice and agrees with the measurements adopted by the collector in his classification of this merchandise. Under questioning by the court, the witness admitted that these toys, at the time of importation, are received in an outstretched position.

Defendant introduced the testimony of one witness, who stated that he is vice president and general manager of the Gund Manufacturing Co., manufacturer of stuffed animal toys like those under consideration. The witness' testimony is to the effect that these stuffed animal toys are always bought and sold throughout the United States on the basis of overall measurements, i. e., "from the top of the ear to the end of the foot." As illustrative of his testimony, the witness identified samples of stuffed animal toys of American manufacture (defendant's illustrative exhibits B, C, D, E, and F), which are "bendable" toys, like the two articles under consideration. In addition, the witness produced three catalogs (defendant's collective illustrative exhibit G), issued by his company. All of the catalogs relate to stuffed animal toys. The witness testified that where the height of the toy is given, it refers to the measurement of the toy when "straightened out" and not in a sitting position. Concerning the use by children of stuffed animal toys, such as those in question, the witness testified as follows:

Q. Have you seen stuffed animal toys like Exhibits 1 and 2 used by children?—A. Oh, yes.

Q. Have you seen them held by children?—A. Yes.

Q. In what position were they held?—A. Almost any position.

Q. Were they held in an outstretched position?—A. Generally, a child would hold a toy in an outstretched position because generally the child will hold the toy this way [indicating].

CHIEF JUDGE OLIVER: That is close to the body?

THE WITNESS: That's right. Of course, they will drag them. A toy like this, a child may be walking along and drag it, but it still would be outstretched [indicating].

The discussion in the briefs of the respective parties with reference to the measurement of the height of natural animals is not pertinent to the issue herein. The question before us concerns the tariff classification of articles that are concededly toys, within the statutory meaning of the term, defined in paragraph 1513 of the Tariff Act of 1930, as follows:

\* \* \* As used in this paragraph the term "toy" means an article chiefly used for the amusement of children, whether or not also suitable for physical exercise or for mental development.

The controlling element of the foregoing definition is the matter of chief use, and that chief use is "for the amusement of children."

"The law is well settled that the classification by the collector and his official acts are presumptively correct" (*McKesson & Robbins, Inc.* v. *United States*, 27 C. C. P. A. (Customs) 157, C. A. D. 77), and it is equally "well established that the collector is presumed to have found every fact to exist that was necessary to sustain his classification," (*E. I. du Pont de Nemours & Co.* v. *United States*, 27 C. C. P. A. (Customs) 146, C. A. D. 75). It is also a fundamental principle in customs law that the plaintiff in a classification case has the twofold burden of proving the correctness of the alleged claim, as well as showing that the collector's classification is wrong. (*Joseph E. Seagram & Sons, Inc.* v. *United States*, 30 C. C. P. A. (Customs) 150, C. A. D. 227; *United States* v. *Enrique C. Lineiro*, 37 C. C. P. A. (Customs) 5, C. A. D. 410.)

On the basis of the record herein, plaintiff has not sustained its burden, as imposed under the cited authorities. That the toys in question are displayed in a sitting position in showrooms or store windows, which is the substance of the testimony adduced by plaintiff, offers nothing favorable toward plaintiff's claim. Use for display purposes suggests sales promotion of the articles, rather than use for the amusement of children. The use of these toys by children for their amusement, as shown by the record evidence, is that they are used in "almost any position," but generally in a flat or outstretched position. Associating such general or chief use with the meaning of the word "height," defined in Funk & Wagnalls Standard Dictionary as the "Distance (perpendicular or angular) above some natural or assumed base" and in Webster's New International Dictionary as "the measure upward from a surface, as the floor or the ground, of a man or an animal" supports the conclusion that the "height" of each of the toys under consideration is its overall measurement, as found by the collector.

For all of the reasons hereinabove set forth, we hold that plaintiff has failed to overcome the presumption of correctness attaching to the collector's classification and, accordingly, sustain his classification under the residuary provision for toys, not specially provided for, in paragraph 1513 of the Tariff Act of 1930, carrying a dutiable rate of 70 per centum ad valorem, as assessed.

The protest is overruled and judgment will be rendered accordingly.